IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN MARTINEZ,  )
  )
        Plaintiff,  )
  )
v.  )  No. 08 C 2601
  )
TAMMY GARCIA, et al.,  )
  )
        Defendants.  )

MEMORANDUM ORDER

On May 9, 2008 this Court issued the attached memorandum opinion and order ("Opinion"), which dealt in some detail with the distressing ("truly shocking," Opinion at 2) situation portrayed in the self-prepared 42 U.S.C. §1983 Complaint filed by John Martinez ("Martinez"). Because Martinez had not then paid the $350 filing fee, nor had he followed the procedure marked out in 28 U.S.C. §1915 ("Section 1915"), this Court was unable to deal with Martinez' Complaint on the merits, but it caused copies of the two critical forms supplied by this District Court's Clerk's Office--its In Forma Pauperis Application ("Application") and its Motion for Appointment of Counsel ("Motion")--to be supplied to Martinez, at the same time transmitting copies of the relevant papers to an Assistant Attorney General.

Some three weeks later this Court received filled-out forms of the Application (together with an institutional printout reflecting transactions in Martinez' inmate trust fund account) and the Motion, which stated in part that Martinez would furnish

further information as to his efforts to obtain legal representation on his own as soon as he heard from the several lawyers whom he had written. That further information was necessary to enable this Court to address the Motion, as Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)(en banc) has recently reconfirmed:

> Pro se prisoner litigation and requests for pro bono counsel are pervasive in federal court; over time, our cases have settled on a general framework to guide the district court's exercise of discretion. When confronted with a request under §1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? Farmer [v. Haas], 990 F.2d [319,] at 321-22 [(7th Cir. 1993)]. The first step in this analysis is not at issue in this appeal; we will not address it further except to reiterate that it is a threshold question the district court must ask before ruling on a §1915(e)(1) motion.

But this Court has waited in vain for any further word from Martinez in that respect. With Martinez having provided nothing further in the additional intervening weeks, this Court is still not in a position to act affirmatively on the Motion, even though the second question identified in Pruitt would certainly call for a "No" answer.

Accordingly a copy of this memorandum order is being sent to Martinez in the hope that he will follow up as he had indicated in his Motion. In the meantime, however, this Court will act on his Application by granting it. In that respect the average

2

balance in his trust fund account at Stateville Correctional Center ("Stateville," where he is serving his sentence) during the six months before he filed suit amounted to $141.18 (a bit higher than the average monthly deposits to the account during the same period), so that the initial payment required on account of the $350 filing fee is $28.24.

Accordingly Martinez is assessed that initial fee of $28.24, and the Stateville trust fund officer is ordered to collect that amount from Martinez' trust fund account there and to pay it directly to the Clerk of Court ("Clerk"):

>Office of the Clerk
>United States District Court
>219 South Dearborn Street
>Chicago IL 60604
>
>Attention:  Fiscal Department

After such payment, the trust fund officer at Stateville (or at any other correctional facility where Martinez may hereafter be confined) is authorized to collect monthly payments from his trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from the trust fund account shall be forwarded to the Clerk each time the amount in the account exceeds $10 until the full $350 filing fee is paid. Both the initial payment and all future payments shall clearly identify Martinez' name and the 08 C 2601 case number assigned to this action. To implement these requirements, the Clerk shall send a copy of this order to

3

the Stateville trust fund officer.

Finally, this action is set for a status hearing at 8:45 a.m. July 30, 2008. It is expected that the Attorney General's Office will make arrangements, if no counsel has been appointed for Martinez in the meantime, for Martinez himself to be available to participate in that status hearing telephonically from Stateville.

                                             _____
                                             Milton I. Shadur
                                             Senior United States District Judge

Date: June 30, 2008

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

John Martinez,            )
                          )
         Plaintiff,       )
                          )
    v.                    )   No. 08 C 2601
                          )
Tammy Garcia, et al.,     )
                          )
         Defendants.      )

### MEMORANDUM OPINION AND ORDER

John Martinez ("Martinez") has just tendered a self-prepared Complaint under 42 U.S.C. § 1983 ("Section 1983"), complaining of the assertedly protracted and egregious violation of his Eighth Amendment rights as defined by the seminal decision in <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976) and its extensive progeny. But Martinez' Complaint suffers a threshold procedural deficiency: He has neither paid the $350 filing fee nor followed the procedure marked out by 28 U.S.C. § 1915[1] for any prisoner who seeks to proceed without such payment because of his financial inability to bear that cost.

On the assumption that the latter is the case, this Court is contemporaneously transmitting to Martinez several copies of an In Forma Pauperis Application ("Application") form, to be completed by him and returned promptly together with a printout

---

[1] All further references to Title 28 provisions will simply take the form "Section --."

showing all transactions in his trust fund account at Stateville Correctional Center (where he is in custody) during the six-month period from November 1, 2007 through April 30, 2008. Because this action cannot go forward as an active case until Martinez pursues one of the alternative possibilities referred to in the preceding paragraph, this Court expects to act on the Application and accompanying printout promptly after receiving them.[2]

In the meantime, however, the situation described in Martinez' detailed Complaint narrative is truly shocking. This is not just a matter of accepting Martinez' allegations as true for purposes of the preliminary screening called for by Section 1915A - instead it is borne out by the copies that Martinez has attached to his Complaint reproducing his repeated grievance forms and the responses (perhaps more accurately nonresponses) that have been given to his pleas for medical treatment.

What those documents reflect is that Martinez received the benefit of back surgery at the University of Illinois Medical Facility to remove a slipped disc that had been causing him pain by pressing on the sciatic nerve on the lower right side of his

---

[2] If Martinez does qualify for in forma pauperis treatment and also wishes to obtain the services of an appointed counsel to represent him, he will have to complete this District Court's proscribed form of Motion for Appointment of Counsel, copies of which are also being transmitted to him. In that respect Martinez should give special attention to the need to respond to paragraph 2 of that form, which requires a statement of whatever efforts he has made to obtain counsel on his own.

back. Although his <u>right</u> side was thus rendered pain-free, Martinez later -- and repeatedly -- complained of excruciating pain on the lower <u>left</u> side of his back, accompanied by sharp abdominal pains and blood in his stools. In "response" to Martinez' November 2006 grievance form limning that new problem, Stateville's Medical Director Dr. Partha Ghosh said simply:

> The offender had his back taken care of including the back surgery at University of Illinois. His other problem has been addressed by the health care providers. He was prescribed proper medications on 10/13/06 at MD sick call.

But that reference to Martinez' "other problem [having] been addressed by the health care providers" was a euphemism, for it did <u>not</u> at all denote any professional examination and evaluation. To the contrary, here is how Complaint ¶ 6 -- which might not only be credited for current purposes but is entirely consistent with the above-quoted "response" and with all later nonresponses from Dr. Ghosh and others -- reads:

> 6.   Plaintiff explained to Dr. Williams and Dr. Ghosh that he is in severe pain. Plaintiff tried to explain to both Doctors that he has been submitting sick call slips in attempt to see a Doctor for severe back and abdominal pains, but the request slips go unanswered. Both defendants Dr. Williams and Dr. Ghosh joked about my condition. Dr. Ghosh then asked plaintiff "where do you think your at? This ain't have it your way" Dr. Ghosh then said, I will prescribe you some pain medication for your back and some medication for your abdominal pain." But don't write anymore request slips because me and my staff will not answer them." He then claimed that he spent enough money on plaintiff. Referring to the surgery performed on February 10, 2006.

If Dr. Ghosh (or any other person who is at liberty) had himself experienced like symptoms and had voiced a like

7

complaint, only to receive such a flippant response from some medical practitioner, he would have had the opportunity to go elsewhere to seek the needed medical treatment -- to say nothing of perhaps turning to the licensing authorities to challenge the right of the author of such a callous response to enjoy the privilege of practicing medicine. But a prisoner such as Martinez has neither freedom of movement nor freedom of choice. To characterize the conduct set out in the Complaint as the type of "deliberate indifference" that meets the <u>Estelle v. Gamble</u> test would seem an understatement.

But more to the point -- and whether or not Martinez' action will ultimately be successful in terms of sustaining a claim for damages and other relief -- at a minimum he is entitled to a medical evaluation rather than the flat-out turndowns that he has received until now on such specious grounds. Indeed, after Martinez' repeated efforts over an extended period finally succeeded in getting someone in authority to look at his problem in a professional way, he received the attached statement from Registered Nurse Carol Vance (there is no identification of the physician to whom Nurse Vance spoke). But despite that promise by Nurse Vance, no medical appointment has been forthcoming in the several months since she wrote at the beginning of 2008.

Because of such continued inattention to Martinez' pleas for relief, a copy of this opinion is being transmitted to Assistant

Attorney General Andrew Lambertson, who has shown himself to be a responsible (and responsive) representative of the Attorney General's Office in a number of other cases on this Court's calendar.[3] It is not expected that AAG Lambertson will necessarily take this matter on himself (the assignment of cases is of course a decision for the Attorney General's Office). Instead this Court hopes that he will promptly take whatever steps are necessary to have the case assigned to some responsible AAG - and more importantly, that the assigned AAG will act immediately (before turning to the preparation of a responsive pleading or other legal proceedings) to enable Martinez to get the promised medical examination and evaluation to which he (like anyone else in the same situation) is entitled.

_____
Milton I. Shadur
Senior United States District Judge

Date:  May 9, 2008

---

[3] This action is being undertaken advisedly in the interest of justice, even in advance of Martinez' payment of the $350 filing fee (which seems unlikely) or of his submission of materials that would qualify him for in forma pauperis status.