IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN MARTINEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08 C 2601 |
| ) | |
| TAMMY GARCIA, et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

John Martinez ("Martinez") has brought suit under 42 U.S.C. §1983[1] against various doctors, nurses, medical technicians and other employees of Stateville Correctional Center ("Stateville"), asserting violations of his Eighth Amendment right to be free from cruel and unusual punishment. Defendants Terry McCann ("McCann"), Ami Workman ("Workman") and Tammy Garcia ("Garcia") have moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, and the parties have proceeded in accordance with this District Court's LR 56.1.[2] For the reasons stated here, the

---

[1] Further citations to the Title 42 provisions will take the form "Section --," referring to the Title 42 numbering rather than to the statute's internal numbering.

[2] LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. This opinion cites to defendants' LR 56.1 statement as "D. St. ¶--," to Martinez's LR 56.1 statement as "M. St. ¶--" and to Martinez's response as "M. Resp. ¶-." Where Martinez's response does not provide a version of the facts different from the original statement, this opinion cites only that original statement. Citations to defendants' and Martinez's memoranda take the forms "D. Mem. --" and "M. Mem. --"

1

Rule 56 motion is denied in its entirety.

**Summary Judgment Standard**

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).[3] For that purpose courts consider the entire evidentiary record and must view all of the evidence and draw all inferences from that evidence in the light most favorable to nonmovants (Egan Marine Corp. v. Great Am. Ins. Co. of N.Y., -- F.3d --, 2001 WL 5924425, at *9 (7th Cir. Nov. 23)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (Carmichael v. Vill. of Palatine, Ill., 605 F.3d 451, 460 (7th Cir. 2010), quoting Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)). As Hall v. Bodine Elec. Co., 276 F.3d 345, 354 (7th Cir. 2002) has explained in confirming the appropriateness of a summary judgment there:

---

respectively.

[3] At the summary judgment stage, of course, nonmovant Martinez need not "establish" or "show" or "prove" anything, but must merely demonstrate that a genuine issue of material fact exists. This opinion's later employment of the quoted terms is due to the cited cases' use of that terminology, but this Court imposes on Martinez the lesser burden described earlier in this footnote.

2

> It is well settled that conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact.

Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). What follows is a summary of the relevant facts, viewed of course in the light most favorable to nonmovant Martinez.

**Factual Background**

At all times material to the allegations made in the Amended Complaint, Martinez was a prisoner at Stateville, McCann was the Stateville Warden and Garcia and Workman were grievance officers there (D. St. ¶¶1-4). McCann, Garcia and Workman have no medical expertise or training (<u>id</u>. ¶¶36-38).

In February 2006 Martinez underwent surgery for a herniated disc to address pain on the lower <u>right</u> side of his back (<u>id</u>. ¶8). Later that year (in October) he sought medical treatment for severe pain in the <u>left</u> side of his back as well as abdominal pain, blood in his stool, the vomiting of blood and a blood-like taste in his mouth (<u>id</u>. ¶¶9-10; M. St. ¶1). Martinez was sent to an appointment with Dr. Parthasarathi Ghosh, at which time he explained his stomach and back problems to Dr. Ghosh and to Physician Assistant LaTanya Williams ("Williams")(M. St. ¶2). Dr. Ghosh did not examine Martinez physically, but he prescribed pain medication and instructed Martinez not to submit any more

3

sick call requests because Stateville had already expended enough money on his behalf (id. ¶3). Williams told Martinez that she would not go over Dr. Ghosh's head to help him (id. ¶4).

After the appointment with Dr. Ghosh, Martinez continued to experience the back pain and stomach issues (M. St. ¶5). No one responded to his repeated requests for medical attention (id.). Sandy Thompson, a medical technician, informed Martinez that he had been given a direct order from Dr. Ghosh "not to attend to your cry baby ass" (id.).

Stateville prisoners may use a grievance process to address complaints regarding their medical care (D. St. ¶11). Grievances are given to a prisoner's assigned counselor, who sends one copy to a grievance office and another to the healthcare unit (id. ¶¶11-12). Responses from the healthcare unit are recorded in the grievance officer's report and then reported to the Warden (id. ¶¶13-14).

Grievance officers are authorized to review all previous grievances in a prisoner's file (M. St. ¶6). But although the Illinois Administrative Code ("Code") specifically dictates that grievance officers must "review grievances" and "consider the grievance" (20 Code §504.830(a) and (d)), grievance officers at Stateville do not--they simply record the healthcare unit's response verbatim (M. Resp. ¶15). After the grievance officer reaches a decision as the Code requires, the Code then specifies

4

that the Warden is to review and sign off on the grievance (D. St. ¶21).

Garcia testified that she does not read medical grievances except insofar as needed simply to determine that the grievance is medical in nature (M. St. ¶8). She does not review the healthcare unit's response to the grievance except to copy it into her report (id.), and she relatedly insisted in her deposition that grievance officers are responsible only for recording medical grievances but need not review them (Garcia Dep. 26-27). Garcia could not envision any circumstance in which she would find the healthcare unit's response to be unacceptable, and she would not consider the possibility of an insufficient response (M. St. ¶9). Every medical grievance Garcia ever reviewed appeared to her to have been resolved (id.).

Workman similarly testified that the only response she could issue to a medical grievance was to find that the healthcare unit had resolved the grievance (M. St. ¶11). She does not evaluate the healthcare unit's response in any way, and she admitted that there is no practical purpose served by having a grievance officer review medical grievances (id.).

Prisoners may request that a grievance be handled on an emergency basis by forwarding the grievance directly to the Warden (D. St. ¶16). Under the Code the grievance qualifies for emergency treatment if the Warden determines that there is a

5

substantial risk of imminent personal injury or other serious or irreparable harm to the prisoner (id.; 20 Code §504.840(a)).[4] Once a decision has been reached, the Warden must so advise the prisoner in writing (D. St. ¶18). Although no individual may routinely perform the Warden's duties, a Warden may designate another person to perform his or her duties "during periods of his or her temporary absence or in an emergency" (20 Code §504.805(b)). It was "common practice" for McCann's designee to review and sign both regular and emergency grievances instead of McCann himself (D. St. ¶¶21-22).

On November 8, 2006 Martinez filed a grievance detailing his back and stomach problems and complaining that his requests for medical attention were ignored (the "November 2006 Grievance") (M. St. ¶15). Again he reiterated that although he had undergone back surgery that successfully alleviated pain on the right side of his back, he was now experiencing a new and different problem

---

[4] Warden McCann testified bizarrely that a grievance would be afforded emergency treatment only if he deemed it life-threatening--otherwise it would be reissued as a regular grievance (D. St. ¶17). Even apart from the tension between that position and the earlier-described lack of evaluation of grievances by the grievance officers, that approach is both illogical and inhumane and directly contradicts the Code, as any number of hypotheticals could illustrate. Suppose a prisoner filed an emergency grievance alleging that a Stateville guard was raping him on a regular basis, although no life threats accompanied the rapes. Under McCann's standard the grievance would not qualify as an emergency and would be addressed only after completion of the months-long regular grievance process. Such a notion is clearly unconscionable.

on the <u>left</u> side (id. ¶16).  On December 28, 2006 Dr. Ghosh wrote this purported response (D. St. ¶25):

> The Offender had his back taken care of including the back surgery at University of Illinois.  His other problem has been addressed by the health care providers.  He was prescribed proper medications on 10/13/06 at MD sick call.

On May 17, 2007--more than six months after Martinez had filed the November 2006 Grievance--Garcia concluded that the grievance was resolved and recommended no further action D. St. ¶26, M. St. ¶18).  She conducted no investigation, reviewed no documents other than the memo and did not interview Martinez or anyone else (id. ¶19).  McCann's designee concurred in Garcia's denial of the November 2006 Grievance on May 23, 2007 (M. St. ¶28).

On April 6, 2007 Martinez filed two emergency grievances labeled Grievance 709 and Grievance 585 (M. St. ¶22).  Though they overlap, they will be reviewed separately here.

In Grievance 709 Martinez again requested treatment for his stomach and the left side of his back, noting that he had explained to Stateville staff that the pain was unbearable and was interfering with his sleep and daily activities (M. St. ¶¶22-23), again reiterating (id. ¶24):

> I have no pain on the right side [of my back] at all. I add that because the doctors and medical staff keep denying me medical attention and they are justifying it by saying that I was sent to U.I.C. Hospital on 2-6-06 and [was] treated for my back problems.  I'm trying to explain that the pain is on my left side.

7

Martinez also complained that the stomach medication he received was ineffective (id.). McCann personally denied emergency review of Grievance 709, and it was reissued as a regular grievance (id. ¶25).

For his part, Dr. Ghosh responded in a May 25, 2007 memo (D. St. ¶31):

> The offender had been evaluated in offsite clinic given MRI [sic]. He also had back surgery. Martinez received pain medicines appropriately. Because of limited time Physics Therapy [sic] is provided based on priority.

Dr. Ghosh failed to address Martinez's complaints of vomiting blood and of blood in his stools and saliva (id.). On July 5 Workman copied the memo into her report verbatim--woodenly including all typographical errors and omissions of articles and punctuation in the original--and concluded that the grievance was resolved (M. St. ¶27). She did not consider whether the memo addressed the issues raised by the grievance, but simply recommended no further action (id. ¶28). McCann's designee concurred with Workman's decision and signed off on the report on the same day (id.).

Grievance 585 was identical to the portion of Grievance 709 that detailed Martinez's back issues, but it did not include his stomach complaints (M. St. ¶29). McCann again personally denied emergency review of Grievance 585, and it too was reissued as a regular grievance (id. ¶30). Dr. Ghosh produced a memo identical

8

to the earlier-quoted "response" to Grievance 709 (id. ¶31). On June 15, 2007 Garcia copied the memo into her report, again including all typographical errors and omissions, and she again concluded the grievance was resolved (id. ¶32). She did not review Martinez's file for previous grievances, perform any investigation, review any documents except for the memo, interview Martinez or anyone else, seek a more responsive memo from Dr. Ghosh or consider whether Dr. Ghosh apparently did not know left from right (id. ¶¶32-34). McCann's designee concurred with Garcia's decision and signed off on the report on June 19 (id. ¶34).

On December 4, 2007 Martinez wrote a letter directly to Warden McCann in yet another effort to obtain medical treatment for his back and stomach ailments (M. St. ¶35). He reiterated that his previous attempts to obtain treatment were ignored and that Dr. Ghosh's responses to the grievances referred to the right side of Martinez's back rather than the left side, where he was now experiencing pain (id.). McCann never responded (id. ¶36).

Martinez also had a conversation with McCann while McCann was doing rounds in Martinez's cell block (M. St. ¶38). Martinez explained that medical staff were ignoring his requests for medical attention for his back and stomach (id.). Although McCann had the ability to send Martinez to the healthcare unit

and promised to do so, Martinez was not seen by anyone after their conversation (id. ¶¶37, 39). Martinez filed this action on May 6, 2008, at which time he still had not received medical attention (see this Court's May 9, 2008 minute order).

## Eighth Amendment Violations

As Greeno v. Daley, 414 F.3d 645, 652 (7th Cir. 2005) has said, quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976):

> Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners."

Claims of deliberate indifference to a serious medical need require that the prisoner show that his medical condition is objectively serious, a concept defined as a condition "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention" (id. at 653).[5] Prison officials must also have acted with a culpable state of mind by disregarding a known substantial risk of harm to the prisoner (id.). If the risk was obvious, a factfinder may infer the prison official knew of a substantial risk (id.). As Farmer v. Brennan, 511 U.S. 825, 842 (1994)

---

[5] Defendants do not contest that Martinez's medical complaints were objectively serious for purposes of the current Rule 56 motion (D. Mem. 3 n. 1). In any event, it is clear that Martinez's medical complaints meet the "objectively serious" test because even a lay person would perceive that vomiting blood, blood in one's saliva and stool and excruciating back and abdominal pain warrant medical attention, particularly where those conditions persist for months.

teaches:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.

Nonmedical prison officials are ordinarily insulated from liability if they reasonably rely on the judgment of medical professionals (Johnson v. Doughty, 433 F.3d 1001, 1010-11 (7th Cir. 2006)).  But that protection vanishes if the official has "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner" (id. at 1011 n. 9, quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)).  There can be no reasonable reliance on the judgment of a medical staff where it is obvious that the staff is failing to exercise its medical judgment (Spruill, 372 F.3d at 236).  Liability under Section 1983 arises "if the conduct causing the constitutional deprivation occurs at [the prison official's] direction or with [his] knowledge and consent" (Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995), quoting earlier caselaw (bracketed language inserted here)).  It is sufficient if the official knows about the conduct and facilitates, approves, condones or turns a blind eye to it (id.).

Here Garcia and Workman impermissibly limited their involvement (1) to a purely surface determination that Martinez's three grievances were medical in nature and then (2) to simply copying the healthcare unit's responses, totally disregarding

11

whether they addressed Martinez's complaints.  Yet even the most cursory review of the responses by any lay person expressly reveals that the healthcare unit was <u>not</u> <u>treating</u> the new pain Martinez was experiencing on the <u>left</u> side of his back, referring instead to successful surgical treatment more than a year earlier for pain on the <u>right</u> side of his back.  And Martinez's abdominal complaints were ignored entirely after the October 2006 appointment with Dr. Ghosh.

In short, Martinez repeatedly complained that the medical staff refused to treat conditions A and B, while the sole response was that condition C had been adequately treated a year before.  Yet Garcia and Workman (and perhaps just as unacceptably, their lawyers) contend that simply parroting back the healthcare unit's memo constitutes an adequate response even if the memo is nonsensical gobbledygook.  It is particularly troubling that, according to their testimony, the officers felt that the only possible response to a medical grievance was that it had been "resolved."

<u>Arnett v. Webster</u>, 658 F.3d 742, 755 (7th Cir. 2011) has recently reconfirmed that "[n]on-medical defendants cannot simply ignore an inmate's plight" where they are on notice that there is a risk to the inmate's health or safety.  Here the clearly non-responsive nature of the healthcare unit's "responses" to the detailed statements in Martinez's grievances confirms that Garcia

12

and Workman were on notice of a risk to Martinez's health. Based on Martinez's submissions on the current motion, their refusal to exercise their authority as grievance officers reflects deliberate indifference once Garcia and Workman were alerted to such risk (id. at 756).

As for Warden McCann, if all that had been presented here were the signoffs by his designees after the administrative processing of Martinez's grievances, his potential liability would be of the respondeat superior type not actionable under Section 1983. But such is not the case--instead his direct involvement calls into play the teaching of Vance v. Peters, 97 F.3d 987, 993 (7th Cir. 1996):

> [A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.

Quite apart from the propriety of Warden McCann's "common practice" of noncompliance with the duty imposed on him through the device of delegating decisionmaking by ignoring the limitations of 20 Code §504.805(b), McCann's failure to take action despite receiving both a letter and an in-person communication in which Martinez informed him of the medical staff's refusal to treat him, coupled with Dr. Ghosh's unresponsive memos, suffices to defeat summary judgment.

**Conclusion**

In candor, with Martinez's evidentiary submissions credited as Rule 56 mandates, Dr. Ghosh's callous conduct besmirches his medical license (to say nothing of the idealism exemplified by the Hippocratic Oath), while the unthinking robotic handling of grievances by Workman and Garcia could qualify them for lead roles in Karel Capek's classic R.U.R.[6] Moreover, what has just been said is not really dependent on the favorable inferences that Rule 56 dictates must be drawn in favor of the nonmovant--instead the bulk of the key evidence is uncontroverted or based on documentary materials or both.

All of that being the case, it is frankly difficult to square defense counsel's presentation of the Rule 56 motion dealt with in this opinion with the objective good faith demanded of them by Rule 11(b). In all events, the Rule 56 motion is denied and this action is set for a status hearing at 9 a.m. February 13, 2012 to discuss the procedures and timing for a resolution of the case on the merits.

_____
Milton I. Shadur
Senior United States District Judge

Date: January 30, 2012

---

[6] As for Warden McCann, despite this Court's full recognition of the many responsibilities imposed on a warden of a correctional institution, it is still difficult to excuse this Warden's violation of the direct personal responsibilities imposed on him by the Code provisions cited here.