IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN MARTINEZ,                         )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )    Case No.  08 C 2601
                                       )
TAMMY GARCIA, et al.,                  )
                                       )
        Defendants.                    )

## MEMORANDUM OPINION AND ORDER

Following this Court's May 16, 2012 issuance of the final pretrial order ("FPTO") that the litigants had jointly submitted, each of the three sets of litigants -- plaintiff John Martinez ("Martinez"), the set of defendants referred to collectively (for convenience) as the "State Defendants" and the other two defendants referred to collectively (again for convenience) as the "Medical Defendants" -- filed motions in limine, which were either responded to in timely fashion or, in a few instances, not objected to at all.  This memorandum opinion and order will deal with the motions in limine filed on behalf of Martinez, with a later opinion or opinions anticipated to be issued as to the other motions.

Martinez's Dkt. No. 157 seeks to exclude evidence of his prior use of drugs or alcohol. Neither set of defendants responded to that motion, and it is therefore granted.

Martinez's Dkt. No. 159 asks that any evidence of claimed gang affiliation on his part and on the part of his anticipated witness Jaime Hauad ("Hauad") be barred.  Here too no opposition was filed by either set of defendants, and so that motion is also granted.

Martinez's Dkt. No. 158 seeks to bar the two opinion witnesses designated by the

"Medical Defendants," Dr. Parthasarathai Ghosh and LaTonya Williams ("Williams"). Those proposed witnesses comprise Dr. Bruce Doblin and the Medical Defendants themselves, and the ground of Martinez's attack is the Medical Defendants' asserted noncompliance with the requirements established by Fed. R. Civ. P. ("Rule") 26(a)(2), as to which Ciomber v. Cooperative Plus, 527 F. 3d 635, 641 (7th Cir. 2008) (citations omitted) teaches:

> Failure to comply with Rule 26(a)(2)'s requirements results in sanctions: the offending party is not allowed to introduce the expert witness's testimony as "evidence on a motion, at a hearing, or a trial." This sanction is "'automatic and mandatory'" unless the offending party can establish "'that its violation of Rule 26(a)(2) was either justified or harmless.'"

To begin with the Medical Defendants qua witnesses, there is no question that neither of them complied with the mandate of Rule 26(a)(2)(C), which applies to opinion witnesses who are not required to provide formal written reports:

> Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure statement must state:
>
> (I)  the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>
> (ii)  a summary of the facts and opinions to which the witness is expected to testify.

Indeed, neither of the Medical Defendants themselves signed onto anything at all -- instead their response to the motion in limine (Dkt. 170) was signed by one of their lawyers and stated only this:

> Defendants disclosed Dr. Ghosh and Ms. Williams to provide opinions regarding their own medical care and that what they did was reasonable and appropriate. The testimony provided will be consistent with their deposition testimony.
>
> That amorphous characterization -- "consistent with their deposition testimony" -- is

totally unsatisfactory. It defeats the entire purpose of opinion witness disclosure, which is aimed at confining the witness' testimony to the specific matters set out in the written report (where one is required) or in the "summary of the facts and opinions to which the witness is expected to testify" (where a disclosure statement, rather than a formal written report, is called for). Quite apart from the question whether a party is well advised to take the deposition of a witness who has committed himself or herself to specific areas of testimony and the grounds for advancing them (see the article by Gregory Joseph, Expert Approaches, 28 No. 4 Litigation 20 (Summer 2002)), no party may fairly require an adversary to engage in guesswork, rather than particularizing the witness' proposed testimony.

Hence both Medical Defendants have disqualified themselves from rendering opinion testimony, though they may of course take the stand as occurrence witnesses simply to recount what services they performed. That self-inflicted wound is one about which they have no basis for complaint.

As for Dr. Doblin, who was required by Rule 26(a)(2)(B) to provide a written report conforming to the requirements of that portion of Rule 26, Martinez's motion has attached a photocopy of his two-page letter dated June 28, 2011. That report provided the purely informational material called for in Rule 26(a)(2)(B)(iv) through (vi), then summarized Dr. Doblin's proposed opinions in this fashion before going on to a more detailed discussion:

> All of the opinions I formed relating to the care and treatment provided by
> Dr. Ghosh and Ms. Williams are to a reasonable degree of medical certainty. It is
> my opinion that Dr. Ghosh and Ms. Williams complied with the standard of care
> and acted in a professional manner in all of their encounters with Mr. Martinez.
> The basis for this opinion is my review of all medical records and deposition
> transcripts. There is nothing in the record whatsoever to suggest that Dr. Ghosh
> or Latonya Williams were deliberately indifferent to Mr. Martinez's medical needs

or that Dr. Ghosh or Ms. Williams' care of the patient fell below the standard of care for a physician or physician's assistant practicing general and/or internal medicine.

That statement is extraordinarily troubling. It must be remembered that seven months after Dr. Doblin rendered his opinion this Court issued its January 30, 2012 memorandum opinion and order ("Opinion") that denied the motion of three of the State Defendants for summary judgment, setting out in its Factual Background section the evidence tendered by the litigants with particular reference to the handling of Martinez's grievances by Dr. Ghosh and Williams.

Of course this Court made none of its own factual findings in that respect -- instead it then (as Rule 56 requires) credited Martinez's version of the facts. But in those terms Dr. Ghosh's alleged handling was really appalling. Following the Opinion's Factual Background and legal analysis, its Conclusion (which denied summary judgment) began in this fashion:

> In candor, with Martinez's evidentiary submissions credited as Rule 56 mandates, Dr. Ghosh's callous conduct besmirches his medical license (to say nothing of the idealism exemplified by the Hippocratic Oath), while the unthinking robotic handling of grievances by Workman and Garcia could qualify them for lead roles in Karel Capek's classic R.U.R.[6] Moreover, what has just been said is not really dependent on the favorable inferences that Rule 56 dictates must be drawn in favor of the nonmovant – instead the bulk of the key evidence is uncontroverted or based on documentary materials or both.

---

[6] As for Warden McCann, despite this Court's full recognition of the many responsibilities imposed on a warden of a correctional institution, it is still difficult to excuse this Warden's violation of the direct personal responsibilities imposed on him by the Code provisions cited here.

What then was Dr. Doblin saying when he referred to "nothing in the record whatsoever"? At best he was making a credibility determination that he was not authorized to make, by

- 4 -

accepting the scenario proffered by Dr. Ghosh and Williams and rejecting that offered by Martinez.

That in candor is an abuse of the system. Lawsuits often resolve themselves into a so-called "battle of the experts," in which each side tenders competing opinions from one or more witnesses for consideration by the trier of fact. Sometimes those opinions are seen by the factfinder as driven by who is paying the tariff charged by the opinion witness -- a regrettable phenomenon that gives rise to the pejorative label of "hired gun." But even in such situations an essential precondition to consideration of the competing opinions is that each witness is playing with an unstacked deck -- that the witness is considering and dealing with <u>all</u> of the evidence, not just the portions that fit the expressed opinion.

What has already been said renders Dr. Doblin's opinion unreliable under the standards established by the seminal opinions in the <u>Daubert</u> and <u>Kumho</u> cases. It is not that Dr. Doblin is without credentials -- his CV is impressive -- but that really cuts against rather than in favor of the admissibility of his tainted opinions. It simply will not do for any witness to flaunt his or her credentialed background as though it can make up for the meretricious nature of the announced opinions.[1]

In sum, Martinez's motion to bar testimony by the Medical Defendants' opinion witnesses is entirely well-taken. Dkt. No. 158 is therefore granted.

---

[1] <u>Matthew</u> 23:27 might well be thought of describing such flawed opinions:

> Whited sepulchres, which indeed appear beautiful outward, but are within full of dead men's bones.

Next Martinez's Dkt. No. 160 seeks to exclude evidence at trial of his own criminal history and that of his proposed witness Hauad. Both the Medical Defendants (in Dkt. No. 171) and the State Defendants (in Dkt. No. 175) oppose that motion, understandably seeking to call to their aid Fed. R. Evid. 609(a)(1)(A), which permits the introduction of felony convictions for impeachment -- "attacking a witness' character for truthfulness."

But the positions on which the parties cross evidentiary swords provide the obvious basis for resolution of the motion:

1. Martinez is not of course seeking to keep from the jury the <u>fact</u> that he and witness Hauad have criminal records. Martinez is after all suing for alleged unconstitutional treatment while he has been an inmate at Stateville Correctional Center ("Stateville"), and Hauad's proposed supporting testimony is based on his claimed observation while in the same status. Neither is in a position to claim that he is in Stateville for any reason other than being a convicted criminal -- indeed, the gravamen of Martinez's entire claim is that he did not receive what the Constitution requires be afforded to prisoners.

2. On the other side of the coin, what defendants would like to do is to let the jury know that both Martinez and Hauad have convictions for murder. To what end, other than the obvious desire to maximize potential prejudice against Martinez and Hauad? Murder is not after all a crime in the nature of crimen falsi, the commission of which involves some element of untruthfulness,

deceit or falsification bearing on the witness' propensity to testify truthfully.

Two opinions by Magistrate Judge Sidney Schenkier of this District Court, although not of course precedential, eloquently explain the reasons that the Fed. R. Evid. 403 balancing process may find that the dangers created by admissibility of the nature of a prior conviction may substantially outweigh any factors supporting such admission -- in the precise language of that rule, "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice . . . or needlessly presenting cumulative evidence." See <u>Jones v. Sheahan</u>, Nos. 99 C 3699 and 01 C 1844, 2003 WL 21654279, at *2 (N.D. Ill. July 14) (also involving a murder conviction) and <u>Earl v. Denny's, Inc.</u>, No. 01 C 5182, 2002 WL 31819021, at *2-3 (N.D. Ill. Dec. 13) (involving a conviction for aggravated sexual assault), and see also other cases cited in both of those opinions.

Here the result really follows a fortiori from the conclusions announced in those cases. In terms of the quoted balancing process under Fed. R. Evid. 403, the introduction into evidence in this case of the <u>fact</u> of criminal convictions of Martinez and Hauad (let alone the nature of their prior crimes) would really provide no incremental probative force at all -- it would be totally cumulative of something about which the jury will necessarily be well aware -- while the potential for unfair prejudice bulks large. As said earlier, the answer is obvious:

1. Either the parties should stipulate, or if not this Court would itself be prepared to advise the jury of the obvious truism, that each of those two individuals has been convicted of a crime, but <u>not</u> as to the nature of that crime.

- 7 -

2. Seventh Circuit Federal Jury Instruction 1.15, dealing with the

impeachment of witnesses based on such convictions, will be given

as part of the jury instructions in the case.

Finally, Martinez's Dkt. No. 161 seeks "to bar Defendants from offering evidence and raising any adverse inferences at trial based on Plaintiff's inability to produce copies of the sick call slips he submitted requesting medical treatment." Medical Defendants have tendered nothing in opposition to that motion, while the self-styled "State Defendants" have submitted Dkt. No. 176 as their response. It is difficult to choose between myopia and astigmatism in characterizing that response's opposition to the motion, for the State Defendants have clearly viewed it through distorted lenses.

Martinez is after all a prisoner. As he testified at his deposition (as summarized at pages 1 and 2 of his motion):

> Plaintiff testified at his deposition that he followed IDOC's protocol of completing "sick call slips" to request medical care for his severe back pain and stomach pain, but that Defendants ignored those repeated requests for treatment. *See* relevant portions of Pl.'s Dep. Tr. attached hereto as **Exhibit 1**, pp. 7-9, 19-20. The sick call slips are forms furnished by IDOC. Inmates fill out these forms and submit them to request medical care. After Plaintiff completed each sick call slip, he deposited it into a sick call slip box or gave it to the Defendants. As an incarcerated prisoner, Plaintiff did not have the means to make photocopies of the sick call slips and he perceived no need at that time to make copies of the sick call slips. Consequently, Plaintiff does not have copies of the sick call slips he submitted to request medical care in his possession.

And there is a very good reason that Martinez has been unable to supply the actual sick call slips to support his oral testimony about his repeated (and unsuccessful) efforts to obtain treatment for his ongoing medical difficulties -- here is what the Chief Legal Counsel for the Illinois Department of Corrections ("IDOC") wrote to the law firm that is representing State Defendants

in this action (Dkt. No. 161 Ex. 3):

> In response to your subpoena dated January 19, 2010, directed to the Illinois Department of Corrections, enclosed are copies of the responsive documents we have obtained to date. In response to your first request, the Department does not keep sick call slips or requests for medical care submitted from inmates.

Under those circumstances, State Defendants' Dkt. No. 176 response is frankly astonishing. After repeating the nature of Martinez's motion, their counsel distorts that motion by misstating what Martinez is seeking:

> In essence, Plaintiff attempts to shirk his burden of proving deliberate indifference to his medical care against each individual defendant because he himself and the Illinois Department of Corrections did not keep records of his "sick call slips," that he may or may not have submitted. *See* Pl. Motion in Lim generally. Plaintiff argues that he was unable to make copies of his "sick call slips, " that Defendants had an obligation to keep copies of these "sick call slips," and their lack of doing so constitutes spoliation. Id.

Then, adding an apparent inability to count to three to that unfair spin on the motion, here is how defense counsel summarizes the asserted problems with the motion:

> Plaintiff's arguments fail for three [sic] reasons: 1) Defendants are not the Keeper of the Records for Illinois Department of Corrections and had no obligation to maintain these alleged documents, if they in fact existed; and, 2) Plaintiff will not be prejudiced at trial for the non-existence of these documents.

As for the first of those two (not three) contentions, it must be remembered that Martinez is not advancing a typical spoliation claim, which asserts that the absence of a document leads to the inference that its content would have been adverse to the nonproducing party. Here the absence of sick call slips, which must be placed at the doorstep of IDOC – the State Defendants' acknowledged employer -- simply means that the State Defendants have no evidence to challenge Martinez's testimony that he repeatedly sought medical help.

Given the absence of any dispute (1) that Martinez did not have the facility to make

copies of and to retain such copies of the repeated sick call slips and (2) that IDOC itself chose not to retain those slips, Martinez is clearly entitled to the granting of his request that no adverse inference may be drawn from the present nonexistence of those documents. And that means as well that no lawyers' argument on that score is permissible either.

As for State Defendants' second asserted "reason," they are quite right in stating that Martinez "will not be prejudiced at trial for the non-existence of these documents." This Court will make sure that such is the case, and defense counsel must avoid that subject as forbidden territory in their evidentiary presentation and in their arguments.

**Conclusion**

Like candidates for a "least valuable player" label in a World Series game, Medical Defendants and State Defendants have collectively gone 0 for 5 on Martinez's motions in limine (Dkt. No. 157 - 161), all of which are granted. But the Series is not yet over, and it remains to be seen whether those defendants will fare better on their own motions in limine.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 5, 2012